NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1857-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ISAAC A. YOUNG,

    Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **January 9, 2017**
>
> **APPELLATE DIVISION**

_____

Argued telephonically December 29, 2016 —
Decided January 9, 2017

Before Judges Espinosa, Rothstadt, and
Currier.

On appeal from Superior Court of New Jersey,
Law Division, Salem County, Indictment No.
13-09-00524.

Justin T. Loughry argued the cause for
appellant (Loughry and Lindsay, LLC,
attorneys; Mr. Loughry, on the briefs).

Joseph A. Glyn, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney for
respondent; Mr. Glyn, of counsel and on the
brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

Defendant Isaac A. Young appeals from a judgment of

conviction the Law Division entered after his first trial ended

in a mistrial and the jury in his retrial convicted him of permitting or encouraging the release of a confidential child abuse record, a fourth-degree offense, N.J.S.A. 9:6-8.10b, hindering his own apprehension or prosecution by giving a false statement to law enforcement, a disorderly persons offense, N.J.S.A. 2C:29-3(b)(4),[1] and fourth-degree false swearing by inconsistent statements, N.J.S.A. 2C:28-2(a). The charges against defendant arose from his receiving copies of the Division of Youth and Family Services' (the Division)[2] confidential child abuse reports that substantiated an allegation of abuse against a candidate for mayor and giving those records to a police officer for mailing to others for political purposes.

In addition, during the ensuing investigation, defendant gave two contradictory statements to law enforcement. In his first statement, he denied giving copies of the documents to the police officer, while in his second statement, he admitted to that conduct and claimed the earlier statement was based on an

---

[1] The September 11, 2013 indictment originally charged defendant in the third-degree for hindering apprehension or prosecution by giving a false statement to law enforcement, N.J.S.A. 2C:29-3(b)(4), (count four) but this was later amended to a disorderly persons offense.

[2] On June 29, 2012, the Division of Youth and Family Services was renamed the Division of Child Protection and Permanency. L. 2012, c. 16.

incorrect assumption. According to defendant, his second statement was a retraction of the first one.

On appeal, defendant argues that his conviction for releasing the documents must be vacated because the statute prohibiting the release of child abuse records does not apply to his conduct and, as there was no offense for which he could hinder his own apprehension, that his conviction for hindering must also be vacated. He also contends that the court erred in instructing the jury that his testimony from his first trial was not to be considered in support of his retraction defense,[3] and by providing the "false in one, false in all" instruction. The State disagrees and argues defendant violated the prohibition against disclosing the subject document and therefore his conviction for that offense and hindering should stand. It also contends that the trial court properly instructed the jury in accordance with defendant's agreement at trial and therefore no error was committed.

We have considered the parties' contentions in light of our review of the record and the applicable legal principles. We reverse defendant's conviction for encouraging the release of

---

[3] Defendant did not testify at his second trial. His testimony from the first trial was read into the record.

the confidential document, but affirm his convictions for hindering and false swearing.

The facts leading to defendant's conviction can be summarized as follows. The events that gave rise to defendant's prosecution occurred in the context of the 2012 mayoral election in the City of Salem. At the time, defendant was the executive director of the city's housing authority. Defendant's friend and political ally, the incumbent-mayor Robert Davis, was defeated by then-councilman Charles Washington, who was eventually elected mayor.

The testimony and exhibits adduced at trial, including portions of defendant's testimony from his first trial that were read to the jury, established that defendant came into possession of documents[4] sent by the Division to the City's police chief. The documents advised the chief that the Division substantiated allegations of child abuse that had been made against Washington. The allegations were later deemed to be unsubstantiated by the Division. The evidence also established that defendant showed the documents to others in his office and

---

[4] The documents consisted of an unsigned letter addressed to the Salem Community Center Board regarding the abuse charges made against Washington, a letter from the Division to the city's chief of police transmitting a Division "Confidential Report of Substantiated Abuse / Neglect to Law Enforcement Agencies" regarding Washington, and a city police department prisoner log.

gave copies to a police officer, Sergeant Leon Daniels, so that Daniels could distribute the documents to others for political purposes.

According to Daniels, defendant called him into his office where Daniels saw "10 to 20 copies" of the documents[5] sitting on defendant's desk "along with a sheet of stamps and envelopes." Defendant gave Daniels a voter registration list and asked him to mail the documents to the individuals whose names he had "underlined in red." Daniels complied and, after handwriting the addresses on the envelopes, sent the documents out that night and called defendant to inform him.

Washington found out about the letter's distribution and called the city's police chief to his home and showed him the documents that had been mailed out. The chief "recognized the handwriting on the[] envelopes" as being Daniels's, and reported the incident to the Salem County Prosecutor's Office (SCPO). The SCPO initiated an investigation into the release of the confidential documents. Eventually the SCPO determined that Terri Gross, a civilian clerk with the police department, had obtained the documents from the department and given them to

---

[5] The city's police department's prisoner log purportedly established that Washington had been arrested and jailed in connection with the allegations. As it turned out, the individual identified in the log was Washington's relative.

Mayor Davis, and that defendant "had nothing to do with" Gross's release of the documents to Davis.[6]

During the investigation, defendant and Daniels initially gave conflicting versions about what transpired between them regarding the documents. Daniels stated that he had received the documents from defendant and mailed them out at defendant's instruction.

On the same day that Daniels gave his statement, defendant, with an attorney present, gave his first sworn statement to the SCPO. Defendant stated he had received the Division records in an anonymous mailing and made "maybe one or two copies . . . to show the folks at the office," and that he "may have made a copy" to bring to a community center, where he sat on the board of directors, but denied mailing them to anyone. He admitted showing the documents to Daniels, but denied giving Daniels any copies because Daniels "already had it." Defendant also denied ever having seen the envelopes in which the mailings were sent and giving the documents to anyone to distribute.

According to Daniels, defendant came to his house later that day and asked him what he had told the SCPO. Daniels

---

[6]  The grand jury charged Gross under the same indictment as it charged defendant. She was tried separately and convicted. Her appeal from her conviction is pending. See State v. Gross, No. A-3010-14.

stated to defendant that he had told the truth and defendant should do the same, and that defendant said he would go back to the SCPO and "come clean."

Defendant returned to the SCPO more than a month later with an attorney and gave another sworn statement. Defendant said Daniels approached him "maybe three or four weeks after the primary" to request copies of the anonymous letters that had been sent out — not the Division records — but that he "didn't acknowledge [Daniels's] request." He stated Daniels approached him again "sometime in July" for copies of the Division records and for a third time "maybe a couple weeks" later, at which point he made "four or five" copies of the Division documents and the prisoner log and gave them to Daniels, along with stamps, envelopes, and the voter registration list, so Daniels could send them to "his fellow police officers."

At defendant's first trial, he testified about his inconsistent statements. According to his testimony, defendant received the Division's documents in June or July 2012 in an anonymous mailing, gave Daniels copies of the documents and envelopes in response to a request Daniels made, but never directed Daniels to mail them out. Regarding the discrepancies between his two statements, he stated that when he was first asked if he had ever given the documents to anyone he said no

because he "wasn't really thinking that [the interviewing officers were] talking about a police officer, because it was one of their own" and that he had returned to the SCPO to "clarify things" with his second statement.

After defendant's arrest, and before his first trial, defendant filed a motion to dismiss the charge relating to the unlawful release of the confidential documents. Defendant argued that the statute he was charged with violating, N.J.S.A. 9:6-8.10b, did not apply to his conduct. The court denied that motion, stating that:

> The defense reading of the statute would narrow it to such a point that it would basically become ineffective to anyone but a person, in this case [the person] in the police department who did it, even if that person had multiple co-conspirators that were outside the department that assisted or that encouraged or that caused it to happen.

After defendant's conviction, the court sentenced defendant to concurrent terms of probation and entered the judgment of conviction. This appeal followed.

In his appeal, defendant presents three arguments:

> POINT I
>
> THE COURT'S DEFINITION OF "RELEASE" AND ITS JURY INSTRUCTIONS CREATED A NEW CRIME; THE WORDS OF THE STATUTE DO NOT PENALIZE THE CONDUCT FOR WHICH THE STATE CHARGED MR. YOUNG AND FOR WHICH THE JURY CONVICTED, AS MR.

YOUNG DID NOT RELEASE THE DOCUMENTS WITHIN THE MEANING OF THE STATUTE AND THE STATUTE DOES NOT CREATE ANY GENERAL DUTY OF CONFIDENTIALITY APPLICABLE TO A CITIZEN WHO DID NOT RECEIVE THE DOCUMENT FROM THE "DEPARTMENT" SO THAT MR[.] YOUNG WAS NOT UNDER ANY LEGAL OBLIGATON TO KEEP THE DOCUMENTS CONFIDENTIAL. (Raised Below).

POINT II

WITH MR. YOUNG COMMITTING NO CONDUCT CONSTITUTING AN OFFENSE UN[D]ER TITLE 9:10A AND 10B, THERE CAN BE NO CONVICTION FOR "HINDERING APPREHENSION." (Not Raised Below).

POINT III

THE JURY INSTRUCTIONS THAT PERTAIN TO OR AFFECT THE RETRACTION DEFENSE PLACED TOO MANY STRICTURES ON ITS APPLICATION, INCLUDING REQUIRING THE JURY TO IGNORE ANY ADDITIONAL "RETRACTIVE" ASPECTS OF THE DEFENDNAT'S [SIC] IN COURT TESTIMONY AT THE FIRST (MIS) TRIAL, AND INCLUDING A "FALSE IN ONE" CHARGE THAT WAS PARTICULARLY INAPPOSITE IN THE CONTEXT OF A RETRACTION DEFENSE. (Not Raised Below).

We first address defendant's contention that his conduct did not violate the prohibition against the release of Division records because he did not receive them "from the department." He argues the trial court erred initially in denying his motion to dismiss the indictment for that offense and later in its

instruction to the jury regarding the definition of "release." According to defendant, the court's definition of release — "to permit to be issued, shown and published or equivalent terms" — "defined [the term] so broadly as to permit the criminal condemnation of conduct that did not offend [N.J.S.A. 9:6-8.10b]." He contends the court's actions violated due process by imposing a previously-nonexistent obligation upon all individuals to maintain the confidentiality of Division records, and that the doctrine of lenity applies to limit the expansion of this obligation to those outside the Division.

The State counters and contends that the obligation to maintain the confidentiality of Division records is not limited to the Division alone. It relies upon the language in N.J.S.A. 9:6-8.10b, which prohibits the release of records by "[a]ny person," and N.J.S.A. 9:6-8.10a, which provides that Division records "may be disclosed only under circumstances expressly authorized under" the statute, and the purpose and history of the relevant legislation.

Our resolution of the parties' dispute requires us at the outset to turn to the language of the applicable statutes. In order to determine if a person, like defendant, who obtains a confidential document from sources other than the Division, and who did not encourage their original release, can be subject to

10                                                         A-1857-14T4

the statute's prohibitions, we apply our "well-settled" "principles governing statutory interpretation[:]"

> We begin with the statutory language. [In re Kollman, 210 N.J. 557, 568 (2012)]. "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted). "When that language 'clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms.'" State v. Olivero, 221 N.J. 632, 639 (2015) (quoting McCann v. Clerk of Jersey City, 167 N.J. 311, 320 (2001)).
>
> [State v. Walters, 445 N.J. Super. 596, 601 (App. Div. 2016).]

See also State v. Shelley, 205 N.J. 320, 323 (2011). "We will not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Marino v. Marino, 200 N.J. 315, 329 (2009) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

Where it is not clear whether something is permitted under a criminal statute, the benefit of this lack of clarity should accrue to the defendant. If an ambiguity in a criminal statute is not resolved by reviewing the text and extrinsic sources, the rule of lenity dictates that the ambiguities must be interpreted in favor of the defendant. State v. Sumulikoski, 221 N.J. 93,

110 (2015). Thus, "all penal statutes are to be strictly construed." State v. Twiggs, 445 N.J. Super. 23, 36 (App. Div. 2016) (citing State v. D.A., 191 N.J. 158, 164 (2007)).

Also, when the language does not yield an unambiguous interpretation, we continue the process to discern legislative intent, interpreting statutory language "in accordance with common sense" and may "consider the entire legislative scheme of which a particular provision is but a part." Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 380 (2015). "[W]e may [also] turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero, supra, 183 N.J. at 492-93 (citation omitted); see also Burnett v. Cty. of Bergen, 198 N.J. 408, 421 (2009). There are many tools available for our analysis, but only one goal. "Regardless of the materials relied upon and the analytical tools employed, in the final analysis, courts should seek to effectuate the fundamental purpose for which the legislation was enacted." In re Young, 202 N.J. 50, 64 (2010) (citation omitted).

The plain language of N.J.S.A. 9:6-8.10a requires that the Division and any person or entity to which the Division lawfully releases information, maintain the confidentiality of reports of child abuse, including information gathered during investigation

of those reports. New Jersey's child welfare laws impose an obligation that "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse [to] report the same immediately to the Division . . . ." N.J.S.A. 9:6-8.10. Reports of abuse made to the Division and "all information obtained by [the Division] in investigating such reports" must be kept confidential. N.J.S.A. 9:6-8.10a(a). That information, however, "may be disclosed[, but] only under the circumstances expressly authorized" by the statute. Ibid. The statute specifies various entities and people to whom disclosure can be made under various conditions. N.J.S.A. 9:6-8.10a(b)[7]-(g). Among them is "[a] police or other law enforcement agency investigating a report of child abuse or neglect." N.J.S.A. 9:6-8.10a(b)(2).

The statute imposes a similar duty upon authorized recipients to maintain the confidentiality of the information disclosed to them by the Division. The prohibition against disclosure is included in subsection b of the statute, immediately after it delineates the twenty—three agencies and entities to which the Division may disclose the information. It states:

---

[7]    N.J.S.A. 9:6-8.10a(b)(1)-(23) sets forth exceptions to the confidentiality requirements of N.J.S.A. 9:6-8.10a(a).

> Any individual, agency, board, court, grand jury, legislative committee, or other entity which <u>receives from the department</u> the records and reports referred to in subsection a., shall keep the records and reports, or parts thereof, confidential and shall not disclose the records and reports or parts thereof except as authorized by law.
>
> [<u>N.J.S.A.</u> 9:6-8.10a(b) (emphasis added).]

Pursuant to <u>N.J.S.A.</u> 9:6-8.10a(e), where the Division has substantiated an allegation of child abuse, it is required to "forward to the police or law enforcement agency in whose jurisdiction the child named in the report resides," specific information about the incident including "the identity of persons alleged to have committed child abuse or neglect and of victims of child abuse or neglect, . . . the nature of the allegations, and other relevant information . . . ." The statute requires that once received, "[t]he police or law enforcement agency shall keep such information confidential." <u>Ibid.</u>

The statute, therefore, prohibits the Division or anyone who receives confidential documents in accordance with the statutes from failing to maintain the documents' confidentiality. The next statute, <u>N.J.S.A.</u> 9:6-8.10b, imposes a penalty upon "[a]ny person who willfully permits or encourages the release of the contents of any record or report <u>in</u>

contravention of this act . . . ." N.J.S.A. 9:6-8.10b (emphasis added). That statute makes a release "a misdemeanor . . . subject[ing a violator] to a fine of not more than $1,000.00, or to imprisonment for not more than 3 years, or both." Ibid. See also N.J. Div. of Youth & Family Servs. v. M.R., 314 N.J. Super. 390, 400 (App. Div. 1998) ("Violation of the confidentiality of this information is said to be a 'misdemeanor.'").[8]

We conclude that because the Legislature specifically limited culpability under the statute to authorized individuals or entities that receive confidential documents from the Division but then fail to maintain their confidentiality or anyone who encourages their improper release, there was no evidence adduced at defendant's trial that he violated the plain language of N.J.S.A. 9:6-8.10b. It was undisputed that he did not receive any documents from the Division or from Gross, or that he encouraged Gross to release the documents to him or anyone else.[9] Defendant claimed he received the documents in an

---

[8] "[A] crime defined by any statute of this State other than [the criminal] code and designated as a misdemeanor shall constitute for the purpose of sentence a crime of the fourth degree." N.J.S.A. 2C:43-1(b). Therefore, imprisonment for a violation of N.J.S.A. 9:6-8.10b is limited to eighteen months. See N.J.S.A. 2C:43-6(a)(4).

[9] According to Gross, she gave the documents to Davis, but there was no direct evidence that Davis gave them to defendant.

anonymous mailing sent to him and there was no evidence to the contrary.

Therefore, applying the statute's clear language, the trial court erred by not dismissing on its own motion the charge that defendant violated N.J.S.A. 9:6-8.10a(b). See R. 3:18-1 ("At the close of . . . evidence . . . , the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction. . . .")(emphasis added).[10] While we do not take issue with the court's denial of defendant's motion to dismiss his indictment before trial because of the court's belief there was evidence presented to the grand jury that defendant somehow conspired with Gross or others for the release of the documents, we find no support in the record for the court allowing the matter to go to the jury in the absence of any evidence to support a conviction on the charge of releasing confidential documents. Accordingly, defendant's conviction for that offense must be vacated.

---

[10] Because we reach the conclusion that the conviction must be vacated and the indictment dismissed, we choose not to address defendant's argument regarding the trial court's jury charge as to the definition of the offense and the meaning of the word "release."

Despite our conclusion that defendant's conduct did not constitute a violation of N.J.S.A. 9:6-8.10a(b)'s prohibition against disclosure, we disagree with defendant that his conviction for hindering by making a false statement to police should have been dismissed as well. We agree with the State's contention that N.J.S.A. 2C:29-3(b)(4) "does not require that defendant actually be charged with an offense or that a conviction be successful" for a defendant to be criminally liable for hindering an investigation or prosecution for committing the underlying offense in order to be guilty.

As defendant did not raise this challenge to his hindering conviction before the trial court, we review his claim for "plain error." R. 2:10-2 (any error will be disregarded unless it was "clearly capable of producing an unjust result . . . ."). Applying that standard, we conclude the trial court did not commit any error even though defendant was improperly convicted of releasing confidential child abuse records.

The hindering statute under which defendant was charged provides in pertinent part: "A person commits an offense if, with purpose to hinder his own detention, apprehension, investigation, prosecution, conviction or punishment . . . for

an offense[11] . . . he . . . [g]ives false information to a law enforcement officer . . . ." N.J.S.A. 2C:29-3(b)(4) (emphasis added).[12] At trial, the jury had sufficient evidence to support its finding that when defendant gave his first statement to law enforcement he committed a violation of the hindering statute. Daniels testified to the fact that defendant gave him the documents and defendant himself admitted as much in his second

---

[11] The New Jersey Code of Criminal Justice defines an "offense" as "a crime, a disorderly persons offense or a petty disorderly persons offense unless a particular section in this code is intended to apply to less than all three." N.J.S.A. 2C:1-14(k).

Thus, the underlying offense with which defendant was charged — the release of confidential Division records — constitutes an offense for purposes of the hindering statute. See N.J.S.A. 2C:1-14(k); N.J.S.A. 9:6-8.10b ("Any person who willfully permits or encourages the release of the contents of any record or report in contravention of this act shall be guilty of a misdemeanor . . . .").

[12] The grading of the offense is dependent upon a defendant's conduct and the nature of the underlying charge. The statute states in relevant part:

> [T]he offense under subsection b. of this section is a crime of the third degree if the conduct which the actor knows has been charged or is liable to be charged against him would constitute a crime of the second degree or greater. The offense is a crime of the fourth degree if such conduct would constitute a crime of the third degree. Otherwise it is a disorderly persons offense.
>
> [N.J.S.A. 2C:29-3(b)(emphasis added).]

statement, after giving an earlier sworn statement to the contrary.

The evidence presented at trial required the court to allow the jury to determine whether defendant was guilty of the offense. Once the jury made its determination, the court did not commit any error, let alone plain error, by not dismissing defendant's conviction on the hindering charge. Regardless of whether defendant actually committed the offense for which he was under investigation at the time he spoke to police, he violated the statute by giving a false statement to the police during the course of their investigation. We have no reason to disturb his conviction.

We also reject defendant's contention that his conviction for false swearing should be vacated because the court erred in its instructions to the jury. According to defendant, "[t]he court did not instruct the jury to examine [defendant's first trial's] in court testimony as a potential part of [his] retraction [defense], but rather only to look at the in court testimony . . . as it might bear on [defendant's] credibility." He argues the jury should have been permitted to consider his testimony at his first trial only as evidence in support of his retraction defense, as it explained why his second statement to police was inconsistent with his first one.

In response, the State argues that defendant invited any purported error in the court's instruction regarding the retraction defense by repeatedly agreeing to the court's proposed instruction, thereby barring his claim of error on appeal. The State urges, however, that the court properly instructed the jury that it could consider defendant's testimony at his first trial only for purposes of determining credibility — not as evidence of retraction — because his testimony did not retract his prior statements and was not made "in the course of the same proceeding or matter" as his earlier statements. The State also argues the instruction was necessary because instructing the jury otherwise would have risked the jury convicting defendant of false swearing based on inconsistencies between his statements and his testimony, which was not charged in the indictment, and would have violated due process.

We review defendant's argument under the plain error standard, R. 2:10-2, as defendant also never raised this contention before the trial court. In the context of a challenge to a court's jury instructions, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a

clear capacity to bring about an unjust result.'" State v. Nero, 195 N.J. 397, 407 (2008) (quoting State v. Chapland, 187 N.J. 275, 288-89 (2006)). We view "[t]he alleged error . . . in the totality of the entire charge, not in isolation." Nero, supra, 195 N.J. at 407 (quoting Chapland, supra, 187 N.J. at 288-89). Where no objection is raised at trial, we will "presum[e] that the charge was not error and was unlikely to prejudice the defendant's case," State v. Singleton, 211 N.J. 157, 182 (2012), and any error will be disregarded unless it constitutes plain error, in that it was "clearly capable of producing an unjust result . . . ." R. 2:10-2.

When a defendant "invites" the error, a more stringent standard applies, and "relief will not be forthcoming on a claim of error by that defendant." State v. Jenkins, 178 N.J. 347, 358 (2004). "The [invited-error] doctrine prevents litigants from 'playing fast and loose' with, or otherwise manipulating, the judicial process." Id. at 359 (quoting State v. Gonzalez, 142 N.J. 618, 632 (1995)). A "defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." Id. at 358 (quoting State v. Pontery, 19 N.J. 457, 471 (1955)).

"In other words, if a party has 'invited' the error, he is barred from raising an objection for the first time on appeal." State v. A.R., 213 N.J. 542, 561 (2013).

Applying these standards, we conclude the court did not commit any error in its instruction to the jury about using defendant's testimony from his first trial only for credibility purposes, rather than as evidence of a false statement or his retraction. In any event, even if the court committed an error in its charge, it was clearly invited and certainly not plain error.

N.J.S.A. 2C:28-2(a) provides "A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true, is guilty of a crime of the fourth degree." It also addresses situations where a defendant made inconsistent statements. The statute states:

> Where the defendant made inconsistent statements under oath or equivalent affirmation, both having been made within the period of the statute of limitations, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and not believed by the defendant. In such case it shall not be necessary for the prosecution to prove which statement was false but only that one or the other was false and not believed by the defendant to be true.

[N.J.S.A. 2C:28-2(c).]

The statute also permits a defendant to assert a defense of retraction as set forth in N.J.S.A. 2C:28-1(d). That statute states "[i]t is an affirmative defense . . . that the actor retracted the falsification in the course of the proceeding or matter in which it was made prior to the termination of the proceeding or matter without having caused irreparable harm to any party." N.J.S.A. 2C:28-1(d). "To retract means to take back what was said; to recant." Model Jury Charge (Criminal), N.J.S.A. 2C:28-2(a) "Affirmative Defense of Retraction" (2002) ; Model Jury Charge (Criminal), N.J.S.A. 2C:28-2(c) "Affirmative Defense of Retraction" (2003).

The indictment against defendant charged him with false swearing as a result of his giving two inconsistent statements to law enforcement while under oath. The charge had nothing to do with his testimony from his first trial that was read to the jury at his second trial. As noted, in one he denied giving the Division report to Daniels, and in the other he admitted that he did. At his first trial, he attempted to explain why he gave a different statement from the first. The jury determined defendant was guilty of committing the offense of false swearing under subsection c of the statute.

Defendant's challenge to the court's charge about the limited use of his first trial's testimony is undermined by the record, which reveals that the charge about which defendant complains was given in response to concerns he raised and with his agreement. During the charge conference, defense counsel agreed that defendant's first trial testimony was not intended to retract either statement he gave to law enforcement. Also, counsel raised a concern that the jury might think his first trial's testimony could be used as a basis for convicting him of making a false statement if the jury believed that his trial testimony was not truthful. He expressly agreed with the court that the jury could "use [the first trial's testimony] to determine whether [defendant] was truthful in giving statements [he gave to law enforcement], but not to giving a false statement" as charged in the indictment.

After the charge conference, the court instructed the jury on the elements of the offense consistent with the model jury charge and specifically identified the two statements made by defendant to law enforcement as the basis for the charge against him. It also explained the defense of retraction, relying again upon the model jury charge, and told the jury that it was defendant's position that the second statement was given in order to retract defendant's first one. It also made clear that

defendant's first trial's testimony had nothing to do with the charge against him and should only be considered for credibility purposes. Defendant never raised any objection to the charge.

During the course of their deliberations, the jurors raised a question as to the false swearing charge. While conferring with counsel, the court suggested that it would tell the jurors that they had to decide whether the second statement was a retraction. Defense counsel agreed. The court then re-read its charge on false swearing, told the jurors it could only use the first-trial's testimony for credibility purposes, and that the jury should determine whether defendant's second statement to law enforcement was a retraction of the first. Defendant did not raise any objection to the court's instructions and never requested that his first-trial's testimony be the basis of his retraction defense.

As defendant did not object to the charge at the time, it is "presum[ed] that the charge was not error and was unlikely to prejudice the defendant's case." Singleton, supra, 211 N.J. at 182. Moreover, in any event, we find no merit to defendant's contention that his trial testimony, which essentially clarified his second statement's explanation for denying he gave Daniels copies of the subject documents, constituted a retraction as contemplated by the statute. His conviction is affirmed.

Finally, defendant contends that the court should not have given the jury a "false in one, false in all" instruction because doing so "virtually instructed the jury to reject the retraction defense." Again, because defendant did not challenge this charge at trial we review the court's instruction for plain error. R. 2:10-2. We find no merit to defendant's argument as we discern no error by the court instructing the jury with this charge either.

The "false in one, false in all" charge instructs the jury that if the jurors find that any witness "willfully or knowingly testified falsely to any material facts in the case, with intent to deceive [them], [the jury] may give such weight to his or her testimony as [they] may deem it is entitled." Model Jury Charge (Criminal), "False in One False in All" (1991). It has been long recognized that the issuance of a false in one, false in all charge rests in the sound discretion of the trial judge. See State v. Ernst, 32 N.J. 567, 583-84 (1960), cert. denied, 364 U.S. 943, 81 S. Ct. 464, 5 L. Ed. 2d 374 (1961); State v. Fleckenstein, 60 N.J. Super. 399, 408 (App. Div.) (noting that the evidential inference of repetitive falsity is not mandatory), certif. denied, 33 N.J. 109 (1960).

In light of the conflicting evidence about statements made by defendant to law enforcement officers and his first-trial's

testimony attempting to explain those inconsistencies, we discern no abuse in the trial court's discretion by its charging the jury with this charge. Defendant's arguments to the contrary about the charge's impact upon his retraction defense are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2). Suffice it to say that defendant's statements were not "[i]nadvertent misstatements or immaterial falsehoods," State v. D'Ippolito, 22 N.J. 318, 324 (1956), and provided a sufficient basis for the court to include the charge in its instructions to the jury.

Defendant's conviction for violating N.J.S.A. 9:6-8.10b is vacated and the indictment as to that charge is dismissed. His convictions for hindering by giving a false statement, N.J.S.A. 2C:29-3(b)(4), and false swearing, N.J.S.A. 2C:28-2(a) are affirmed. The matter is remanded to the trial court for entry of an amended judgment of conviction consistent with our opinion and resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION