NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0773-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CINDY KEOGH and
DAVID KEOGH,

    Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **February 7, 2025** |
| **APPELLATE DIVISION** |

Argued January 8, 2025 – Decided February 7, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 19-05-0288.

Emily M. M. Pirro, Assistant Prosecutor, argued the cause for appellant (John P. McDonald, Somerset County Prosecutor, attorney; Emily M. M. Pirro, of counsel and on the brief).

Jeffrey S. Farmer argued the cause for respondent David Keogh (Mazraani & Liguori, LLP, attorneys; Jeffrey S. Farmer, of counsel and on the brief).

Brynn Giannullo, Deputy Public Defender, argued the case for respondent Cindy Keogh (Jennifer N. Sellitti, Public Defender, attorney; Brynn Giannullo, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

This interlocutory appeal requires us to consider the first element of third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a), as applied to the conduct of third parties who allegedly aid or abet another person after that person injures the victim. The State alleges defendants Cindy Keogh and David Keogh aided their son, Ryan D. Keogh, after Ryan[1] shot his friend, Terrance Coulanges, and left him for dead. More particularly, the State claims defendants failed to call 9-1-1 emergency services after defendants arrived at the scene of the injury, observed Coulanges, and learned he was shot. Crucially, the State does not allege defendants aided or assisted Ryan in causing Coulanges's injuries.

By leave granted, the State appeals from an October 12, 2023 Law Division order reconsidering and reversing an August 14, 2020[2] order that denied defendants' motion to dismiss the endangering count charged in a

---

[1] Because the parties share the same surname, we use first names for ease of reference. No disrespect is intended in doing so.

[2] The order provided on appeal is dated August 14, 2019. However, we glean from the record the order was issued on August 14, 2020.

A-0773-23

nineteen-count Somerset County indictment.[3] In an oral decision, the trial court[4] concluded the statute requires defendants to aid or abet Ryan in his infliction of Coulanges's injuries, not the concealment of the crime, which fell within the purview of their hindering charge. The court considered evidence adduced at Ryan's trial – nearly two years after the court issued the August 14, 2020 order – that the victim died within minutes of the shooting before defendants arrived on the scene.

In its overlapping arguments, the State challenges the court's reconsideration decision on substantive and procedural grounds. The State argues the court misconstrued the plain terms of N.J.S.A. 2C:12-1.2(a), which

---

[3] Defendants also were charged in the same count with hindering apprehension and separate counts of false statements. The August 14, 2020 order granted Cindy's motion to merge the false statement charges against her into a single count.

Ryan was charged in the same indictment with murder, weapons offenses, hindering apprehension, endangering an injured person, five counts of false swearing, and tampering with evidence. A jury convicted Ryan of all but one count of false swearing. He was sentenced to an aggregate prison sentence of fifty-three years, with a forty-two-and-one-half year parole ineligibility term. Ryan's direct appeal was calendared back-to-back with the present appeal, No. A-0565-22, and is pending disposition by this court. Among other issues, Ryan challenges his endangering conviction, but on different grounds from those raised on this appeal.

[4] The same judge issued all orders referenced in our opinion and presided over Ryan's trial.

A-0773-23

the State asserts, "clearly intends . . . to penalize third parties who leave the scene of injury to aid a murderer." The State also asserts the defense did not present "newly-discovered" evidence and, as such, the court had no basis to reconsider the August 14, 2020 order. The State maintains its presentation to the grand jury on the endangering count was sufficient. Further, the State contends the trier of fact must determine the weight to ascribe to the defense expert, whose testimony at Ryan's trial "d[id] not negate the probable cause found by the grand jury," which charged defendants with endangering.

Discerning no procedural irregularity in the court's reconsideration of the interlocutory order under review, we have considered de novo the plain language of N.J.S.A. 2C:12-1.2, as it applies to those who aid or assist another person who caused bodily injury to the victim. We conclude, as did the trial court, defendants cannot be held liable for aiding or abetting Ryan within the meaning of the statute because they did not knowingly aid Ryan in causing bodily injury to Coulanges. Stated another way, we hold a third party cannot be held liable under N.J.S.A. 2C:12-1.2(a), unless the third party "knowingly solicited, aided, encouraged, purposely attempted or knowingly agreed to aid another person in causing bodily injury to the victim" as reflected in the pertinent model jury

4

charge.  See Model Jury Charges (Criminal), "Endangering Injured Victim (N.J.S.A. 2C:12-1.2)" (rev. Mar. 14, 2016).  Accordingly, we affirm.

I.

This is the third time we have granted the State leave to appeal from an interlocutory order in this prosecution.  In our first decision, we reversed a December 11, 2020 order, which reconsidered and reversed a prior order severing Ryan's murder trial from David and Cindy's trial for endangering, hindering, and false statements.  State v. Keogh, No. A-1623-20 (App. Div. July 22, 2021) (slip op. at 2).  The following year, we reversed an August 30, 2021 order suppressing David's and Cindy's statements to police and a November 30, 2021 order denying the State's reconsideration motion.  State v. Keogh, No. A-1355-21 (App. Div. June 28, 2022) (slip op. at 11).

Prior to issuance of our second opinion, Ryan's trial was held on non-consecutive days in March and April 2022.  We briefly summarize the pertinent testimony adduced at his trial.

According to the State's timeline of events, on January 9, 2019, Ryan shot Coulanges at 5:45 p.m. at the family's residence in Bound Brook.  One minute later, at 5:46 p.m., Ryan called Cindy.  He called her again at 5:53 p.m.  The family's home surveillance camera captured Cindy's SUV pulling into the

residence at 5:54 p.m., nine minutes after the shooting; pulling out at 5:55 p.m.; pulling in at 6:06 p.m.; and ultimately leaving at 6:20 p.m. According to cell phone records, at 6:35 p.m., Cindy arrived at David's office in Green Brook, left the office at 6:45 p.m., and arrived home at 6:50 p.m.

At 6:52 p.m., the home surveillance camera captured a sedan entering the driveway. At 6:58 p.m., "David . . . is at [the residence] while the SUV is seen entering the driveway." Cell phone data revealed defendants and Ryan traveled to David's office at 6:59 p.m., and returned home at 7:24 p.m. The surveillance footage depicted the SUV and sedan entering the driveway at that time. Ultimately, Cindy called 9-1-1 at 7:36 p.m.

Coulanges was shot twice. The medical examiner opined the cause of death was a "perforating gunshot wound to left chest and perforating gunshot wound of right thigh with re-entry and exit gunshot wound through the left thigh."

Ryan's forensic pathology expert, Jonathan Arden, M.D., opined Coulanges "likely . . . bled to the point of death in two to three minutes." On cross-examination, Dr. Arden stated, although it was "[h]ighly likely" Coulanges died "within about two to three minutes," it was possible he died within one minute, but "[h]ighly unlikely . . . as much as five." Dr. Arden

6

acknowledged the shooter "would not have been able to reach the same degree of specificity [in] the timing as [he did]." In its merits brief in support of the present appeal, the State asserts "[Dr. Arden's] report with the same information was filed on April 27, 2020, two years before Ryan's trial and over three years before the instant motion was filed."[5]

One year after Ryan was convicted, defendants applied for pretrial intervention (PTI). The State rejected their application, defendants appealed to the Law Division, and the court upheld the prosecutor's decision.[6] During colloquy with counsel on the August 9, 2023 return date, the court questioned the viability of the endangering charge against defendants in view of the medical testimony adduced at Ryan's trial. Specifically, Dr. Arden testified that one of the shots "was so injurious there wouldn't have been any opportunity to render aid." David's counsel agreed, adding "the failure to render aid" under the endangering statute "is only imposed on a person who does the injury."

---

[5] Dr. Arden's report is not included in the parties' appellate appendices.

[6] The State provided a transcript of oral argument on defendants' PTI appeal, but did not include the court's decision and memorializing order in its appendix.

A-0773-23

Ten days after oral argument on defendants' PTI appeal, Cindy moved for reconsideration of the August 14, 2020 order, which had denied defendants' motion to dismiss the endangering charge. David joined her motion.

During oral argument on their reconsideration motion, defense counsel cited Dr. Arden's trial testimony that the victim died within two minutes of the shooting and argued defendants could not have rendered aid to Coulanges, who died before they each arrived at the shooting scene. Defendants acknowledged Dr. Arden's opinion was stated in his expert report, but argued Dr. Arden's report, unlike his testimony, was "not evidence." Cindy's counsel added Dr. Arden's testimony concerning the timing of Coulanges's death "was undisputed." The State countered reconsideration was inappropriate because the three-year-old expert report was not any different from the testimony adduced at Ryan's trial.

Immediately following argument, the court issued an oral decision granting reconsideration and dismissing the endangering count against defendants. The court correctly summarized the standard underpinning motions to dismiss indictments. Turning to the elements of N.J.S.A. 2C:12-1.2(a), as applied to defendants, the court found they not only must "leave the scene of the injury knowing [or] reasonably believing that the injured person is helpless," but

also they "must either cause the bodily injury or solicit, aid, encourage, or attempt to or agree to aid another." The judge concluded "if I didn't see it . . . in my earlier decision, I certainly see it now." The statute is "read in the conjunctive. Both elements need to be satisfied."

The judge further found, "giving the State every favorable inference," the testimony adduced at Ryan's trial demonstrated Cindy "arrived at the scene five minutes after" the shooting and David arrived "an hour and seven minutes after." Accordingly, Coulanges "died well before there was an opportunity" for defendants "to engage in endangering."

## II.

Our review is informed by well-settled principles. An indictment is presumed valid and should only be dismissed if it is "manifestly deficient or palpably defective." State v. Twiggs, 233 N.J. 513, 532 (2018) (quoting State v. Hogan, 144 N.J. 216, 229 (1996)). A trial court tasked with a motion to dismiss an indictment therefore must determine "whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Saavedra, 222 N.J. 39, 56-57 (2015) (quoting State v. Morrison, 188 N.J. 2, 13 (2006)). If the State has presented

"some evidence establishing each element of the crime to make out a prima facie case" the indictment should stand. Morrison, 188 N.J. at 12. Conversely, "[t]he absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal." Ibid. (quoting Hogan, 144 N.J. at 229).

An appellate court generally reviews a trial court's decision on a motion to dismiss an indictment for abuse of discretion. See Twiggs, 233 N.J. at 532; Hogan, 144 N.J. at 229. A trial judge's legal interpretations, however, are subject to de novo review. See State v. Grate, 220 N.J. 317, 329 (2015). We therefore conduct a de novo review when a decision on a motion to dismiss an indictment "was based on the court's interpretation of the statutes pursuant to which [the] defendant was charged." State v. Bernardi, 456 N.J. Super. 176, 186 (App. Div. 2018); see also Twiggs, 233 N.J. at 532.

"The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). A statute's plain text "is the 'best indicator' of legislative intent." State v. Rodriguez, 238 N.J. 105, 113 (2019) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "When the Legislature's chosen words lead to one clear and

unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." State v. Shelley, 205 N.J. 320, 323 (2011). "When the plain language is ambiguous, however, we consider extrinsic interpretative aids, including legislative history." S.B., 230 N.J. at 68.

"If an ambiguity in a criminal statute is not resolved by reviewing the text and extrinsic sources, the rule of lenity dictates that the ambiguities must be interpreted in favor of the defendant." State v. Young, 448 N.J. Super. 206, 218-19 (App. Div. 2017), aff'd o.b., 233 N.J. 345 (2018). That is because "penal statutes are to be strictly construed." State v. D.A., 191 N.J. 158, 164 (2007).

A.

Against these seminal legal principles, we address the statutory language at issue in view of the State's theory of defendants' culpability. As reflected in the charging language of the endangering count, the State alleges defendants violated N.J.S.A. 2C:12-1.2(a) by "responding to the scene of . . . Coulanges's injury, not calling 9-1-1 immediately after arriving on the scene of the injury and learning of the shooting of . . . Coulanges." The State argues defendants' after-the-shooting conduct is proscribed by the statute's plain terms.

N.J.S.A. 2C:12-1.2(a) provides:

> A person is guilty of endangering an injured victim if he causes bodily injury to any person or solicits, aids,

11

> encourages, or attempts or agrees to aid another, who causes bodily injury to any person, and leaves the scene of the injury knowing or reasonably believing that the injured person is physically helpless, mentally incapacitated or otherwise unable to care for himself.
>
> [(Emphasis added).]

Read literally, the underscored language does not explicitly prohibit third-party culpability after another person inflicts harm on the victim. But the Legislature chose the present tense, "causes bodily injury to any other person," following the term, "who." Had the Legislature selected the term, "caused," we might have been persuaded by the State's argument. Although not the model of clarity, the plain language of the statute suggests a third party's liability is limited to assisting the perpetrator by "solicit[ing], aid[ing], encourag[ing], or attempt[ing] or agree[ing] to aid another" in causing "bodily injury to any person" – not assisting the perpetrator after bodily injury was inflicted. However, to the extent there is any ambiguity in the statutory terms, D.A., 191 N.J. at 164, a strict construction of its terms must be interpreted in defendants' favor, Young, 448 N.J. Super. at 218-19.

Our conclusion is supported by the pertinent model jury charge, which explains:

To find **(defendant)** guilty of endangering an injured person, the State must prove beyond a reasonable doubt each of the following elements:

**[Choose appropriate category]**

1. That he/she

    a. knowingly caused bodily injury to another,

    **Or**

    b. knowingly solicited, aided, encouraged, purposely attempted or knowingly agreed to aid another person in causing bodily injury to the victim;

2. That the injured person was physically helpless, mentally incapacitated, or otherwise unable to care for himself/herself; and

3. That he/she left the scene of the injury knowing or reasonably believing that the injured person was physically helpless, mentally incapacitated, or otherwise unable to care for himself/herself.

The first element that the State must prove beyond a reasonable doubt is that **(defendant)** [**choose appropriate language**] knowingly caused bodily injury to another or knowingly solicited, aided, encouraged, or purposely attempted or knowingly agreed to aid a third person in causing bodily injury to another. Bodily injury means physical pain, illness, or impairment of physical condition.

13

. . . .

The second element that the State must prove beyond a reasonable doubt is that the person who suffered bodily injury was **[CHOOSE AS APPROPRIATE]** physically helpless, or mentally incapacitated, or otherwise unable to care for himself/herself at that time.

. . . .

The third element that the State must prove beyond a reasonable doubt is that (defendant) left the scene of the injury knowing or reasonably believing that the injured person was **[CHOOSE AS APPROPRIATE]** physically helpless, or mentally incapacitated, or otherwise unable to care for himself/herself at that time. The State need not prove defendant's flight increased the risk that further harm would come to the victim.

. . . .

[Model Jury Charges (Criminal), "Endangering Injured Victim (N.J.S.A. 2C:12-1.2)" (rev. Mar. 14, 2016) (emphasis added) (footnotes omitted).]

Initially approved on April 18, 2005 and revised on March 14, 2016, no change was made to the underscored language in the model jury charge.[7] The emphasized language makes clear a third party must aid in causing the injury

---

[7] The model jury charge was revised following the Court's decision in State v. Munafo, 222 N.J. 480 (2015), for reasons that are not relevant here. Model Jury Charges (Criminal), "Endangering Injured Victim (N.J.S.A. 2C:12-1.2)" at n.2.

and leave the scene while the victim is incapacitated. Although model jury charges are "not binding authority," State v. Bryant, 419 N.J. Super. 15, 28 (App. Div. 2011), we are persuaded the model jury charge accurately explains the first element of third-party liability under the endangering statute and aids our interpretation of the statutory terms, see S.B., 230 N.J. at 68; see also State v. R.B., 183 N.J. 308, 325 (2005) ("The process by which model jury charges are adopted in this State is comprehensive and thorough; our model jury charges are reviewed and refined by experienced jurists and lawyers.").

The State cites R.B., but misconstrues the Court's guidance. Although the State correctly notes model jury charges should be conformed to the facts adduced at trial, see R.B., 183 N.J. at 325, the charge issued also must conform with the statutory elements. The State mistakenly urges us to read into the endangering statute an after-the-injury element which is not present.

"Because the language of the statute is clear, we need not examine extrinsic sources." State v. Munafo, 222 N.J. 480, 491 (2015); see also Shelley, 205 N.J. at 323. We have nonetheless considered the State's contention that the legislative history supports its position. Citing our decision in State v. Sanders, 467 N.J. Super. 325 (App. Div. 2021), which surveys the legislative history of

the endangering statute, the State argues defendants "need not be a 'participant' in the underlying harm."

In Sanders, the defendant was acquitted of murder and weapons offenses, but convicted of endangering an injured victim. Id. at 328-29. The trial court "instructed the jury on self-defense as applied to all charges except the endangering charge." Id. at 329. On appeal, we considered whether the defendant's self-defense claim applied to the endangering charge when the defendant injured the victim "in the course of defending himself against said victim." Id. at 334. Concluding the statute's plain terms did not resolve the issue, we considered the statute's legislative history. Id. at 336. Noting "certain aspects of the statute's legislative history remain opaque," id. at 338 (citing State v. Moon, 396 N.J. Super. 109, 117 n.2 (App. Div. 2007)), we turned to newspaper articles issued when the statute was proposed to provide insight into the Legislature's intent in crafting the statute, id. at 339.

Enacted by the Legislature on January 8, 2001, N.J.S.A. 2C:12-1.2 became effective that same date. As we recognized in Sanders, when first introduced in the Senate in 1998, the bill was substantially similar to other states' good Samaritan laws. Sanders, 467 N.J. Super. at 336 (citing S. 1349 (1998)). Thus, the bill required "[a]ny person who knows that a crime is being committed

16

and that the victim of that crime is exposed to bodily injury" to report the crime to police under certain circumstances. Ibid. (alteration in original) (quoting S. 1349 (1998)).

We also noted a contemporaneous news article reported a sponsor "explained that the senators' intention was not to target 'innocent bystanders' but people in the position of the 'passive participants' who, '[b]y their mere presence . . . gave approval to what was going on' and 'could have done something to prevent th[e crime].'" Id. at 340 (quoting Rudy Larini, Jersey Looking to Prosecute Passivity, The Star-Ledger, Oct. 19, 1998, at 13).

The following year, in 1999, a new bill was substituted. Id. at 337 (citing S. 1349 (1999)). We observed, among other revisions, the new bill raised the grading of the offense from a fourth- to a third-degree crime. Ibid. (citing S. Comm. Substitute for S. 1349 (June 7, 1999)). Of particular relevance here, we noted the bill "added the element that the actor had caused, or aided the person who caused the victim's injury." Ibid. (emphasis added).

After the bill passed in the Senate, it was referred to the Senate Judiciary Committee which, in turn, proposed the following revisions: "[a] person is guilty of endangering an injured victim if he causes bodily injury to any person or solicits, aids, encourages, or attempts or agrees to aid another, who causes

bodily injury to any person, <u>or is a participant</u> and leaves the scene." <u>Id.</u> at 338 (alteration in original) (citing <u>First Reprint of S. 968</u> (June 22, 2000)). The Senate also proposed the following definition: "'[p]articipant' shall include an individual who is present at the location of the crime, aware of the criminal activity, and has a nexus to any of the criminal actors." <u>Ibid.</u> (alteration in original).

Ultimately, however, the bill was amended on September 21, 2000, removing the references to "participant." According to the Sponsor Statement, "these additions were unnecessary and could cause confusion for law enforcement agencies seeking to enforce the bill's provisions." <u>Ibid.</u> (citing <u>Sponsor's Statement to First Reprint of S. 968</u> (Sept. 21, 2000)).

Against that legislative history, we reject the State's argument that the Senate's decision to remove the proposed "participants" language from the final version of the statute, reflects the Legislature's intention that defendants need not have aided or abetted Ryan in causing bodily injury to Coulanges under the first statutory element. The class of individuals contemplated in the proposed definition of "participant" had no bearing on the aider or abettor's conduct as the "participant" definition included individuals who merely were present at the crime scene, aware of criminal conduct, and had a nexus to the criminal actors.

Conversely, in all versions of the bills and the final statute, an aider or abettor is required to do more. An aider or abettor must "solicit[] aid[], encourage[], or attempt[] or agree[] to aid another, who causes bodily injury to any person, and leaves the scene of the injury knowing or reasonably believing that the injured person is physically helpless."

We conclude the indictment charging defendants with endangering an injured person was "manifestly deficient or palpably defective," Twiggs, 233 N.J. at 532, because no evidence was presented to the grand jury that defendants aided Ryan by both causing Coulanges's bodily injury and leaving the scene of the injury. The State's theory that defendants "respond[ed] to the scene of . . . Coulanges's injury, [and did] not call[] 9-1-1 immediately after arriving on the scene of the injury and learning of the shooting" does not satisfy the statutory elements. Based on our de novo review of the record in view of the elements of N.J.S.A. 2C:12-1.2, we discern no error in the court's dismissal of the endangering charge.

In so holding, we reject the State's expansive interpretation of after-the-injury third-party culpability. As our colleague Judge Sabatino aptly noted in his concurring opinion in Sanders, "[a]lthough the statute is aimed at laudable humanitarian objectives, it must be construed and applied sensibly within the

19

broad context of general principles of legal responsibility and criminal justice." 467 N.J. Super. at 344 (Sabatino, J., concurring). We discern no basis to broaden the scope of third-party liability under N.J.S.A. 2C:12-1.2.

B.

Nor are we persuaded by the State's argument that defendants' reconsideration motion was procedurally flawed because Dr. Arden's report did not constitute "newly-discovered evidence." Notably, although he joined Cindy's arguments to the contrary before the trial court, on appeal, David submits Dr. Arden's report is irrelevant because the State failed to present a prima facie case to the grand jury that defendants violated the endangering statute.

Our Supreme Court has long recognized a trial court's "inherent power[,] to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Lombardi v. Masso, 207 N.J. 517, 534 (2011) (quoting Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987)). "Until entry of final judgment, only 'sound discretion' and the 'interest of justice' guides the trial court, as Rule 4:42-2 expressly states." Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). By comparison, governed by Rule 4:49-2,

reconsideration of a final order is appropriate for a "narrow corridor" of cases where either the court's decision was made upon a "palpably incorrect or irrational basis," or "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."  Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).  That is because our jurisprudence imposes more stringent standards on reconsideration of, or relief from, final orders and judgments, in recognition of the value placed on finality, and the stability of judgments.  See Lombardi, 207 N.J. at 534-35.

"Although the Rules Governing Criminal Practice do not include a rule for reconsideration," State v. Vanness, 474 N.J. Super. 609, 625-26 (App. Div. 2023), the "Court has never questioned the appropriateness of interlocutory motions to reconsider in criminal matters," State v. Timmendequas, 161 N.J. 515, 554 (1999); see also State v. Puryear, 441 N.J. Super. 280, 293 (App. Div. 2015) (holding reconsideration of an interlocutory order denying the defendants' motion to suppress their statements was appropriate where "the trial court candidly found that it had failed to appreciate the significance" of certain statements made by the police during the defendants' interviews).

Ordinarily, absent a mistaken exercise of discretion, we will not disturb a trial court's order on a motion for reconsideration. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

Applying these principles, we are not persuaded by the State's argument that reconsideration was inappropriate here. The State's reliance on State v. Szemple, 247 N.J. 82 (2021) is misplaced. In Szemple, our Supreme Court discussed the sufficiency of newly discovered evidence to support a motion for a new trial under Rule 3:20-2 and on post-conviction relief. Id. at 99. Similar to the rationale underlying Rule 4:49-2, the Court reasoned "whether evidence is truly newly discovered, is rooted in the idea 'that judgments must be accorded a degree of finality.'" Ibid. (emphasis added) (quoting State v. Ways, 180 N.J. 171, 192 (2004)). No such finality is in play here.

We therefore discern no procedural bar in the court's decision to reconsider its earlier order denying defendants' motion to dismiss the endangering count. "The proper object of reconsideration is to correct a court's

error or oversight." Puryear, 441 N.J. Super. at 294; see also Lombardi, 207 N.J. at 534.

Because we are satisfied the State failed to present sufficient evidence on the first element of the statute, we need not address the State's substantive challenge to the court's reconsideration decision, which considered Dr. Arden's testimony at Ryan's trial that the victim died within two minutes of the shooting. Finding Coulanges "died well before there was an opportunity to engage in endangering," the court implicitly found the State failed to establish the third element of the statute.

For the sake of completeness, however, we have considered the State's argument and part company with the court's reliance on Dr. Arden's testimony. As the State correctly argues, a petit jury is not bound by an expert witness's opinion. See Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 10, 2003). Thus, if Dr. Arden were called as a witness in defendants' trial, the jury could reject his testimony vis-à-vis the third statutory element. Because the State failed to present sufficient evidence to the grand jury on the first element of the endangering statute, however, the third element is of no consequence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-0773-23