# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1711-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WUKEEM W. LEWIS, a/k/a
WALLACE W. LEWIS, and
WAKEEM LEWIS,

    Defendant-Appellant.

_____

Argued May 30, 2018 — Submitted June 26, 2018

Before Judges Hoffman, Gilson, and Mayer.

On appeal from Superior Court of New Jersey,
Law Division, Criminal Part, Union County,
Indictment No. 14-04-0259.

Joshua D. Sanders argued the cause for
appellant (Joseph E. Krakora, Public Defender,
attorney; Joshua D. Sanders, Assistant Deputy
Public Defender, of counsel and on the brief).

Sarah D. Brigham argued the cause for
respondent (Gurbir S. Grewal, Attorney
General, attorney; Sarah D. Brigham, Deputy
Attorney General, of counsel and on the
brief).

PER CURIAM

A jury convicted defendant Wukeem W. Lewis of first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) and (2); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) and 2C:14-2(a)(3); second-degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1 and 2C:14-2(a)(3); and second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and 2C:14-2(c)(1). On the conviction for kidnapping, defendant was sentenced to twenty-eight years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On his conviction for attempted aggravated sexual assault, defendant was sentenced to a consecutive nine years in prison subject to NERA, parole supervision for life, Megan's Law registration, and a restraining order preventing him from having contact with the victim. The two other convictions were merged with the conviction for attempted aggravated sexual assault. Consequently, defendant's aggregate sentence was thirty-seven years in prison, with eighty-five percent of that time ineligible for parole.

Defendant appeals from his convictions and sentences. He challenges his convictions by arguing that the jury instructions on flight and out-of-court identification were flawed. He also contends that his sentences were excessive and he should not have received consecutive sentences. We affirm because we discern no

error in the jury instructions, and the trial court did not abuse its discretion in sentencing defendant.

I.

Defendant's convictions arose out of an assault of a woman as she was walking home during the morning of September 15, 2013. The victim was walking from the train station towards her apartment when she passed a man, later identified as defendant. Defendant tried to get the victim's attention, but the victim kept walking. When defendant followed her, the victim pulled out her cell phone and told defendant that she was going to call the police. Believing that defendant had turned in the other direction, the victim continued walking. Shortly thereafter, however, defendant grabbed her from behind and dragged her towards an abandoned building. He threw the victim to the ground, attempted to remove her clothing, and groped her.

The victim screamed and called for help. A woman who lived in a neighboring building heard her screams and came out to investigate. When the neighbor observed defendant on top of the victim, she ran over and pulled defendant off. The neighbor immediately recognized defendant because she was a prostitute and defendant was one of her "regular" clients. The neighbor also had used drugs with defendant. The neighbor pushed defendant away and

told him to leave. Later she testified that defendant then walked away "really fast."

Thereafter, the victim called 911 and the neighbor spoke with the 911 operator. The neighbor explained that she had just stopped a rape in progress and described the assailant as a black male, wearing glasses, a black cap, a red jacket, blue jeans, and brown boots. She also gave the 911 operator defendant's alias, "Wu," and explained that she knew him personally.

The police responded and, later, they interviewed the neighbor and the victim. The neighbor explained that she knew defendant because she was a prostitute and defendant was a frequent customer. She also explained that she had used drugs with defendant and had sold drugs to defendant. She then provided the police with defendant's phone number.

Thereafter, the police arrested defendant. As part of the investigation, the police showed both the victim and the neighbor photo arrays. The neighbor identified defendant as the assailant from the photo array. The victim was unable to identify defendant from the photo array. At trial, however, the victim did identify defendant as her assailant.

Before trial, defendant moved to introduce evidence that the neighbor was a prostitute and that she had sold drugs to him. The court granted that motion.

4

At trial, the State presented testimony from the victim, the neighbor, three police officers, and several other witnesses. Defendant elected not to testify and did not call any witnesses.

Before closing arguments, the trial court conducted a jury charge conference with counsel and defendant. The court and counsel discussed a charge on flight and defense counsel asked the court to include language informing the jury that defendant denied that he was the assailant and, therefore, denied he was the individual that fled. The court agreed to include that language following the flight charge. The court also reviewed with counsel the charge on out-of-court identifications.

Following the charge conference, the court instructed the jury on the law, including a charge on flight and the out-of-court identification of defendant. The instructions on flight and out-of-court identification included the language requested by defense counsel. In giving the out-of-court identification instruction, the court did not include the "Disguises/Changed Appearance" portion of the Model Jury Charge. Defense counsel made no objection to that omission.

After being charged, and after considering the evidence, the jury convicted defendant of all charges.

On appeal, defendant challenges his convictions and sentences. Specifically, he makes three arguments, which he articulates as follows:

> POINT I — THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FIRST INSTRUCTING THE JURY AS TO FLIGHT BEING POSSIBLY INDICATIVE OF CONSCIOUSNESS OF GUILT AND THEN COMPOUNDED THAT INITIAL ERROR BY ISSUING AN UNCONSTITUTIONAL INSTRUCTION ON FLIGHT AS CONSCIOUSNESS OF GUILT.
>
> POINT II — THE JURY INSTRUCTION ON IDENTIFICATION, WHICH OMITTED THE ESTIMATOR VARIABLE REGARDING "DISGUISES/CHANGED APPEARANCE," FAILED TO ADEQUATELY EXPLAIN A RELEVANT FACTOR FOR ASSESSING THE RELIABILITY OF THE OUT-OF-COURT IDENTIFICATION.
>
> POINT III — MR. LEWIS'S SENTENCE IS EXCESSIVE AND MUST BE REDUCED.

We are not persuaded by any of these arguments and, accordingly, we affirm both the convictions and the sentences. We will first address the jury instructions and defendant's arguments on flight and out-of-court identification. We will then discuss the sentences.

A. The Jury Instructions

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). Accordingly, the trial court must give "a

6 A-1711-16T1

comprehensive explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Ibid. (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

We review the jury charge "as a whole" to determine whether there was any error. State v. Torres, 183 N.J. 554, 564 (2005); see also State v. Marshall, 123 N.J. 1, 145 (1991) ("[T]he prejudicial effect of an omitted instruction must be evaluated 'in light of the totality of the circumstances — including all the instructions to the jury, [and] the arguments of counsel.'").

When counsel does not object to the jury charge at trial, we apply a plain error standard of review. R. 2:10-2. Under that standard, a defendant must demonstrate "legal impropriety in the charge prejudicially affecting [his] substantial rights . . . and [that] . . . the error possessed a clear capacity to bring about an unjust result." State v. Young, 448 N.J. Super. 206, 224 (App. Div. 2017). Moreover, when there was no objection to the charge, we "presum[e] that the charge was not error and was unlikely to prejudice the defendant's case[.]" Ibid. (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

1. The Flight Charge

Defendant raises two issues concerning the jury charge on flight. First, he argues that the evidence was insufficient to

establish that he fled in an attempt to avoid apprehension, which is required to infer a consciousness of guilt. Second, he argues that the jury charge was unconstitutional because it failed to articulate the State's burden of proof on the flight issue.

"Flight from the scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017) (citing State v. Mann, 132 N.J. 410, 418-19 (1993)). A jury instruction on flight requires the jury to first find that there was a departure and then to find that the motive for the departure was an attempt to avoid arrest or prosecution. Mann, 132 N.J. at 421 (citing State v. Wilson, 57 N.J. 39, 49 (1970)). Accordingly, a jury must be able to draw reasonable inferences from the evidence that defendant's motive was to avoid apprehension on the charged offense. Randolph, 228 N.J. at 594-95.

Here, the neighbor testified that when she pulled defendant off of the victim, she recognized defendant, told him to leave, he apologized to her, and he walked away quickly from the scene. The jury also heard testimony from the victim that when defendant was following her, she pulled out her cell phone and told defendant that she would call the police. Accordingly, there was sufficient evidence from which the jury could infer that defendant left the

scene to avoid apprehension in connection with his assault of the victim. We, therefore, find no plain error in the trial court instructing the jury on flight.

Nor do we find any error in the flight charge actually given. The trial court's charge on flight largely tracked the Model Jury Charge. Indeed, the only deviation from the Model Jury Charge was made at the request of defense counsel. In that regard, the court did not include the second sentence of the Model Jury Charge which reads: "The defendant denies any flight, (or, the defendant denies that the acts constituted flight)." Instead, immediately following the flight charge, the trial court gave the jury the following instructions:

> Now, the defendant as part of his general denial of guilt, contends that the State has not presented sufficient, reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offenses. And, indeed, was the person who left the scene of the alleged offenses.

Defendant contends that the jury charge on flight itself did not instruct the jury on the State's burden of proof. Defendant then argues that the appropriate burden is a preponderance of evidence, since flight is not an element of the charged crime. In response, the State asserts that the charge does not need to address the burden. We need not resolve this issue on this appeal.

A-1711-16T1

Here, defendant's request to modify the charge made it clear to the jury that defendant was denying he was the person who left the scene of the offenses. Indeed, the instruction given reminded the jury that the State had to prove "beyond a reasonable doubt that [defendant] is the person who committed the alleged offenses. And, indeed, was the person who left the scene of the alleged offenses." Consequently, considering the flight charge in the context of the entire jury charge, there was no error, much less plain error "clearly capable of producing an unjust result." R. 2:10-2; see also Mogull v. CB Commercial Real Estate Grp., 162 N.J. 449, 466 (2000) (noting that "it is difficult to find that a charge that follows the Model Charge so closely constitutes plain error"). In short, the jury was properly instructed on flight and immediately thereafter reminded that the State had the burden to prove that defendant was the person who left the scene of the alleged offenses.

2. The Out-of-Court Identification Charge

Defendant also contends that the trial court's omission of the "Disguises/Changed Appearance" factor in the overall out-of-court identification charge constituted plain error and requires a new trial. We disagree.

In State v. Henderson, 208 N.J. 208 (2011), our Supreme Court identified a number of factors to be considered in assessing the

10                                                          A-1711-16T1

reliability of eyewitness identifications. The Court also directed that new Model Jury Charges on eyewitness identifications were to be developed, taking into account all of the "variables" addressed in its decision. Id. at 298-99.

As a result of the Henderson Court's decision, the Model Jury Charge on out-of-court identification now includes various factors a jury should consider in deciding what weight, if any, it should give to eyewitness identification testimony. There are five factors that include: (1) opportunity to view and the degree of attention; (2) prior description of the perpetrator; (3) confidence and accuracy; (4) time elapsed; and (5) cross-racial effects. The Model Jury Charge instructs that the court should select and choose the appropriate factors based upon the identification evidence elicited at trial.

Further, the Model Jury Charge instructs that on the first factor — the witness' opportunity to view and degree of attention — the court should choose from seven sub-factors that can affect a witness' view and degree of attention. Those sub-factors include: (a) stress; (b) duration; (c) focus; (d) distance; (e) lighting; (f) intoxication; and (g) disguises/changed appearance.

With regard to "Disguises/Changed Appearance," the Model Jury Charge provides:

> The perpetrator's use of a disguise can effect a witness' ability both to remember and identify the perpetrator. Disguises like hats, sunglasses, or masks can reduce the accuracy of an identification. Similarly, if facial features are altered between the time of the event and a later identification procedure, the accuracy of the identification may decrease.
>
> [Model Jury Charges (Criminal), "Identification: Out-of-Court Identification Only (Non-2C)" (rev. July 19, 2012).]

Here, the trial court did not include the "Disguises/Changed Appearance" portion of the charge. Critically, defendant did not request that portion of the charge, and did not object to the omission of that portion at the time the charge was given.

The testimony at trial established that the neighbor recognized defendant based on her prior and frequent contacts with him. She identified defendant as the assailant twice: once in a photo array and again at trial. While she testified that defendant was wearing glasses at the time of the assault, there was no evidence that defendant had attempted to disguise himself or change his appearance. Consequently, we find no plain error in the court not giving the instruction on "Disguises/Changed Appearance."

B. The Sentences

Defendant challenges his sentences contending that the sentencing court improperly ran his sentences consecutively and imposed excessive sentences. We disagree.

We review sentencing decisions for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010). In so doing, we "must not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated;
>
> (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or
>
> (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Whether a sentence violates sentencing guidelines is a question of law that we review de novo. State v. Robinson, 217 N.J. 594, 604 (2014).

Where a defendant receives more than one sentence of imprisonment "for more than one offense . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). In deciding whether to impose consecutive or concurrent sentences, trial courts must consider the factors set forth and explained in

State v. Yarbough, 100 N.J. 627, 643-44 (1985), cert. denied, 475 U.S. 1014 (1986).  The Yarbough factors focus upon "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims."  State v. Carey, 168 N.J. 413, 423 (2001).  "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal."  State v. Miller, 205 N.J. 109, 129 (2011).

Here, defendant was convicted of four crimes: first-degree kidnapping, third-degree aggravated criminal sexual contact, second-degree attempted aggravated sexual assault, and second-degree attempted sexual assault.  His convictions for aggravated criminal sexual contact and attempted sexual assault were merged with his conviction for attempted aggravated sexual assault.  As already noted, defendant was then sentenced to twenty-eight years in prison on the conviction for kidnapping and a consecutive nine years in prison on the conviction for attempted aggravated sexual assault.

The sentencing court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (likelihood of committing another offense), six, N.J.S.A. 2C:44-1(a)(6) (prior criminal record), and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence).  The court also

found that there were no mitigating factors. Those findings were amply supported by the record. In particular, the court relied on defendant's criminal record, which included five prior indictable convictions, including prior convictions for sexual offenses.

The court then discussed <u>Yarbrough</u> and evaluated its factors. The court made specific findings that the attempted aggravated sexual assault and the kidnapping should not merge and should be treated as two separate criminal acts because they involved distinct actions and each crime had a distinct impact on the victim. <u>See</u> <u>State v. Cole</u>, 120 N.J. 321, 332-35 (1990). Consequently, the sentencing court provided an adequate explanation in support of its decision to impose consecutive sentences. We also discern no abuse of discretion in the sentences imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1711-16T1