# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1363-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STEVEN ALICEA, a/k/a STEVEN
J. ALICEA, ALLICA STEVEN,
LIL STEVEN, and LIL SHINE,

     Defendant-Appellant.

_____

        Submitted September 12, 2018 – Decided October 19, 2018

        Before Judges Yannotti, Gilson, and Natali.

        On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-02-0375.

        Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

        Gurbir S. Grewal, Attorney General, attorney for respondent (Adam D. Klein, Deputy Attorney General, of counsel and on the brief).

        Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Steven Alicea and co-defendant John Gonzalez were charged with numerous crimes related to two incidents that took place on the same day. The first incident involved a robbery and murder, and the second involved a home invasion, robberies, and aggravated sexual assaults. At the time of the incidents, defendant was nineteen years of age and Gonzalez was sixteen years old. Defendant and Gonzalez were tried separately.[1]

A jury convicted defendant of fifteen crimes, which included first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(4); three counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2(a)(1); first-degree use of a juvenile to commit a criminal offense, N.J.S.A. 2C:24-9; two counts of first-degree witness tampering, N.J.S.A. 2C:28-5(a); and various weapons offenses.

---

[1] Co-defendant Gonzalez has filed a separate appeal, which we have addressed in a separate opinion. See State v. Gonzalez, No. A-0066-16 (App. Div. Oct. 19, 2018).

A-1363-16T3

Defendant was sentenced to an aggregate of life without parole plus sixty-six years in prison with forty-one years of parole ineligibility. He appeals his convictions. We affirm.

## I.

The two incidents that gave rise to defendant's convictions occurred on September 30, 2011. There were three victims: L.B. was robbed and murdered; G.T. was robbed; and B.C. was robbed and sexually assaulted.[2] At trial, G.T., B.C., and other witnesses testified. On September 30, 2011, C.B., a friend of L.B., had made arrangements to meet her at his home. Anticipating her arrival, C.B. was looking out a window on the second floor of his home. During the evening, he saw a white van pull up, with L.B. riding in the van. C.B. then saw three Hispanic men in hooded sweatshirts approach the van. He noted that one of the men's sweatshirts had a cartoon character's face on the front. One of the men went to the driver's side of the van and the other two men went to the passenger side.

L.B. exited the van and made her way towards C.B.'s door. C.B. then went downstairs to let L.B. into his home. Before he opened the door, he heard L.B. say: "I don't have anything," and "leave me alone[.]" C.B. then heard gunshots.

_____

[2] We use initials to protect the privacy of the victims and witnesses.

C.B. went back upstairs, looked out the window, and saw L.B. on his front steps. He heard L.B. tell a woman, whom he knew as "Cookie," "they shot me." Cookie called 911.

L.B. was taken to the hospital and ultimately died from her injuries, which included a gunshot wound and head trauma. Before she died, however, a sergeant who had responded to the report of the shooting spoke with L.B. The sergeant testified that L.B. told him that three males shot her.

That same night, G.T. was at his home, which was located approximately two blocks from where L.B. was shot. G.T. was over eighty years old at the time, and B.C., his caretaker and friend, was living with him.

Just after 11 p.m., G.T. and B.C. heard bangs on their door. G.T. opened the door and three men entered the home, one of whom was pointing a gun at G.T., while a second held another gun. The men demanded money from G.T. The men then told B.C. to take her clothes off and forced her to perform oral sex on G.T. Thereafter, B.C. was forced to perform oral sex on the three men and each of the men raped her vaginally and anally. When B.C. tried to resist the assaults, she was punched and hit with a gun.

While at the home, the men searched for and took various items, including watches, keys, a phone, coins, and a chain. The men also threatened G.T. and

4

B.C. throughout the time that they were at the home. Eventually, the men left the home. G.T. then called the police.

The police arrived shortly thereafter and began to search the area for the suspects. Police officers saw several men, one of whom was wearing a red sweatshirt, which matched G.T.'s description of one of the suspects. When the police stopped to question the men, they ran away. The officers pursued and eventually apprehended defendant and Gonzalez. A third suspect escaped and apparently has not been located.

While pursuing defendant, an officer saw defendant discard a handgun, which was later recovered. Officers pursuing Gonzalez observed Gonzalez discard a blue sweatshirt. When police officers later recovered the sweatshirt they found a handgun wrapped in it. Gonzalez was searched incident to his arrest, and the police found two watches and a chain belonging to B.C. and G.T. After being arrested, Gonzalez was taken to G.T.'s home and G.T. identified Gonzalez as one of the men involved in the robbery and sexual assaults. Thereafter, the police also recovered a purse found on the front porch of G.T.'s home. L.B.'s DNA was found on cosmetics inside the purse.

In the meantime, B.C. was taken to the hospital and evaluated by a sexual assault nurse examiner (SANE nurse). During the examination, B.C. described

5

the sequence of events leading up to the sexual assaults and what the suspects looked like. After her examination, B.C. was taken to the police station where she identified defendant in a photo array.

Initially, a grand jury returned an indictment charging defendant and Gonzalez with numerous crimes related to the murder and home invasion. Defendant filed a motion to sever his trial from the trial of Gonzalez and to sever the counts related to the murder from the counts related to the home invasion.

The trial court heard oral argument and granted the motion in part and denied it in part. The court severed the trials of defendant and Gonzalez, but denied the request to sever the various counts of the indictment. The judge found facts connecting the murder and the home invasion sufficient to make the incidents part of an ongoing episode of criminal activity. Accordingly, the judge found that the jury had the right to hear all the evidence and that defendant would not be prejudiced by having a comprehensive trial.

Thereafter, the grand jury returned a superseding indictment charging defendant with fifteen crimes. A trial was conducted in May and June 2016.

At trial, a series of confiscated letters were introduced that implicated defendant in the murder. One of the letters was confiscated from defendant's younger brother while the brother was in jail. Another of the letters was

intercepted when it was sent to Gonzalez in jail. The State presented evidence that the letters had been sent by defendant. The letters contained admissions and indicated that defendant would take revenge if Gonzalez gave a statement against him. After hearing all of the evidence, the jury convicted defendant of all fifteen crimes.

Defendant was sentenced in September 2016. On the murder conviction, defendant was sentenced to a term of life in prison without the possibility of parole. The court also imposed multiple consecutive sentences: for burglary, eight years in prison, with four years of parole ineligibility; for use of a juvenile to commit a criminal offense, fifteen years in prison with seven years of parole ineligibility; for robbery, ten years in prison with eighty-five percent of that time ineligible for parole as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; for aggravated sexual assault, eighteen years in prison subject to NERA; and for tampering with witnesses, fifteen years in prison with seven years of parole ineligibility.

The court also imposed concurrent sentences: for unlawful possession of a weapon, eight years in prison; for two robbery convictions, fifteen and ten year prison terms, both subject to NERA; and for the second count of tampering with witnesses, fifteen years in prison, with seven years of parole ineligibility. The

A-1363-16T3

remaining convictions were merged. Thus, as noted earlier, defendant was sentenced to an aggregate term of life without parole, plus sixty-six years in prison with forty-one years of parole ineligibility.

## II.

On appeal, defendant makes five arguments, which he articulates as follows:

> POINT I – THE COURT ERRED IN DENYING THE MOTION FOR A SEVERANCE OF CHARGES WHEN IT FAILED TO CONDUCT A COFIELD ANALYSIS AND FAILED TO RECOGNIZE THAT, WHILE CERTAIN EVIDENCE MAY HAVE TIED TWO SEPARATE INCIDENTS TOGETHER, OTHER-CRIMES EVIDENCE WAS UNNECESSARY TO PROVE ANY FACT IN ISSUE.[3]
>
> POINT II – THE COURT FAILED TO PROPERLY INSTRUCT ON THE SUBJECT OF VICARIOUS LIABILITY WHEN IT: OMITTED THE BIELKIEWICZ PORTION OF THE ACCOMPLICE CHARGE; FAILED TO INSTRUCT IN ACCORDANCE WITH THE MODEL CHARGE THAT ALICEA HAD TO HAVE KILLED BY HIS OWN CONDUCT IN ORDER TO RECEIVE A SENTENCE OF LIFE WITHOUT POSSIBILITY OF PAROLE; CREATED THE POSSIBILITY OF A NON-UNANIMOUS VERDICT ON THE CONSPIRACY-TO-ROB COUNT; AND FAILED TO

---

[3] Defendant filed a pro se letter brief augmenting arguments his counsel made concerning the denial of the motion for a severance of the charges. He argued: "TRIAL COURT DID NOT PROPERLY DENY APPELLANT'S SEVERENCE MOTION."

ADEQUATELY ANSWER THE QUESTIONS THE JURORS ASKED DURING THEIR DELIBERATIONS.

POINT III – THE JUDGE'S FAILURE TO CHARGE THE JURY REGARDING ALICEA'S EXPLANATION FOR HIS FLIGHT WAS PLAIN ERROR AND DENIED HIM A FAIR TRIAL.

POINT IV – THE COURT COMMITTED PLAIN ERROR IN FAILING TO PROVIDE A LIMITING INSTRUCTION REGARDING EVIDENCE THAT ALICEA HAD DISTRIBUTED NARCOTICS IN THE PAST AND POSSESSED NARCOTICS AT THE TIME OF HIS ARREST.

POINT V – ALICEA IS ENTITLED TO A NEW TRIAL BECAUSE THE COURT'S INSTRUCTION ON IDENTIFICATION WAS FLAWED AS IT WAS NOT TAILORED TO THE CRITICAL FACT THAT THE EYEWITNESSES' PRIOR IDENTIFICATION HAD CONFUSED ALICEA AND HIS CO-DEFENDANT, AND OMITTED ANY REFERENCE TO THE OUT-OF-COURT IDENTIFICATION BY ONE OF THE WITNESSES AT A SHOW-UP PROCEEDING.

Having reviewed these arguments in light of the evidence at trial, we find no error warranting a reversal. Defendant's five arguments can be broken down into two general categories. First, he makes arguments concerning severance. Second, he makes a number of arguments concerning the jury instructions. We will conduct our analysis accordingly.

A-1363-16T3

1. Severance

a. The Motion to Sever the Counts

Defendant argues that the superseding fifteen-count indictment against him involved two separate criminal incidents and that the trial court committed reversible error in not severing the counts related to the murder and robbery of L.B. from the counts related to the home invasion, robberies, and sexual assaults involving G.T. and B.C. We disagree.

Two or more offenses can be charged in the same indictment if the offenses "are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." R. 3:7-6. Trial courts are vested with discretion to sever charges if "it appears that a defendant or the State [will be] prejudiced by a permissible or mandatory joinder of offenses[.]" R. 3:15-2(b). In such circumstances, the trial court may order separate trials on certain counts. Ibid. We review such trial court rulings under an abuse of discretion standard. State v. Sterling, 215 N.J. 65, 73 (2013).

Severance should be granted if there is a danger that the jury could improperly use the evidence cumulatively. Our Supreme Court has explained that

> [t]he relief afforded by Rule 3:15-2(b) addresses the inherent "danger[,] when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all."
>
> [Ibid. (alteration in original) (quoting State v. Pitts, 116 N.J. 580, 601 (1989)).]

"The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" Ibid. (quoting State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (alteration in original)).

Under N.J.R.E. 404(b), "evidence of other crimes, wrongs, or acts" is generally prohibited. If, however, such evidence is offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," it is admissible if "relevant to a material issue in dispute." Ibid. To determine whether other crimes evidence is admissible under N.J.R.E. 404(b), courts use a four-part test:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;

11

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992).]

Here, defendant argues that the trial judge erred in denying his severance motion because the court failed to employ the four-part test under Cofield. We reject this argument for two reasons. First, while the trial judge did not reference Cofield in its analysis, the court made findings under N.J.R.E. 404(b) as it related to severance and, therefore, effectively employed a Cofield analysis. Second, we have conducted a de novo review using the Cofield test, and conclude that the denial of the severance of the counts was sound. See State v. Darby, 174 N.J. 509, 518 (2002) (recognizing that if a trial court fails to conduct a Cofield analysis, an appellate court can evaluate those factors).

In denying defendant's severance motion, the trial judge applied the governing standard and went through the requirements for admission under N.J.R.E. 404(b). First, the judge found that the other crimes evidence was relevant to prove identification. The judge also determined that evidence related to the purse tied together the murder and the home invasion to create an ongoing episode. The other crimes evidence, therefore, was relevant to the jury's

understanding of how the episode unfolded. Indeed, the judge noted the difficulty in using the purse evidence in the homicide trial without discussing the home invasion. In that regard, the murder victim's purse was found at the scene of the home invasion. B.C.'s testimony regarding the purse was relevant to establish that whoever killed L.B. also was involved in the home invasion.

Defendant argues that the crimes are not similar in kind and, therefore, the second prong of Cofield was not satisfied. That argument is not dispositive. While G.T and B.C., the victims of the home invasion, were not murdered, the episodes were linked in terms of time, motive, and opportunity. The trial judge found that the murder and the home invasion were reasonably close in time and part of one ongoing episode. In that regard, the judge noted that the incidents occurred on the same day and within a short time frame. Thus, the second prong was satisfied. Further, our Supreme Court has made clear that the requirements under the second prong of the Cofield analysis are not found in the language of N.J.R.E. 404(b) and, therefore, should only be applied in circumstances similar to those in Cofield. State v. Kemp, 195 N.J. 136, 148 (2008); see also Cofield, 127 N.J. at 330 (considering similarity and proximity of a subsequent illegal drug incident to the drug crime charged in determining admissibility of the other crimes evidence).

Third, there was clear and convincing evidence of the other crimes. In that regard, the trial judge noted evidence of L.B.'s purse and the handguns, as well as testimony from B.C. and G.T. regarding identification.

Finally, the judge found that the probative value of admitting the other crimes evidence for the jury to hear the totality of the circumstances and understand how the episode unfolded was not outweighed by its apparent prejudice. The judge also concluded that while joinder of the counts may be prejudicial to defendant, the other crimes evidence would be admissible under N.J.R.E. 404(b) at both trials if the crimes were tried separately. Particularly, the judge noted that the purse was "an incredibly important element" connecting the incidents. The judge also accepted the State's contention that the other crimes evidence was highly probative in establishing identity.

Given all of the trial judge's findings, we discern no abuse of discretion in the decision to deny severance. Moreover, having conducted a de novo review of the evidence, we find that the Cofield test was satisfied.

b. Limiting Instruction

For the first time on appeal, defendant contends that the prejudice from the joint trial was exacerbated by the trial judge's failure to instruct the jury on

the separate nature of each crime. Because the defense did not request such a limiting instruction at trial, we review this issue for plain error. R. 2:10-2.

Here, the trial court instructed the jury to consider each count separately and to consider only the evidence material to each particular count. The court also instructed the jury that the verdict on each count may be guilty or not guilty. Considering the charge in its entirety, the court made it clear that each count of the indictment was to be considered independently. See State v. Torres, 183 N.J. 554, 564 (2005) (explaining that jury charges subject to appellate review must be considered "as a whole" to determine whether there was any error). Consequently, we discern no error and certainly no plain error in the lack of a limiting instruction.

2. The Jury Instructions

Defendant's remaining arguments challenge various portions of the jury instructions. Initially, we note that with one exception defendant did not object to the jury charge at trial and, therefore, we review the instructions not objected to for plain error. R. 2:10-2. Under that standard, defendant must demonstrate "legal impropriety in the charge prejudicially affecting [his] substantial rights" and that "the error possessed a clear capacity to bring about an unjust result." State v. Young, 448 N.J. Super. 206, 224 (App. Div. 2017). Moreover, when

there was no objection to the charge, we "presum[e] that the charge was not error and was unlikely to prejudice the defendant's case[.]" Ibid. (alteration in original) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). Accordingly, the trial court must give "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Ibid. (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

Appellate courts review the jury charge "as a whole" to determine whether there was any error. Torres, 183 N.J. at 564; see also State v. Marshall, 123 N.J. 1, 145 (1991) ("[T]he prejudicial effect of an omitted instruction must be evaluated 'in light of the totality of the circumstances–including all the instructions to the jury, [and] the arguments of counsel.'" (quoting Ky. v. Whorton, 441 U.S. 786, 789 (1979) (alteration in original))). "There is no reversible error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." Mogull v. CB Commercial Real

Estate Grp., Inc., 162 N.J. 449, 464 (2000) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).

Defendant challenges seven portions of the jury charge: (1) omission of an instruction for accomplice liability for the lesser-included crime of theft; (2) omission of an "own conduct" charge relating to the murder; (3) failure to identify the victim in the conspiracy to commit robbery charge; (4) the trial judge's response to the jury's question regarding "legal accountability"; (5) the jury charge on flight; (6) failure to provide a limiting instruction for evidence that defendant had distributed narcotics and possessed narcotics at the time of his arrest; and (7) failure to tailor the identification charge to the facts of the case. We analyze each of challenged portions of the jury charge in turn.

a. Accomplice Liability

Defendant argues that the trial judge erred in failing to charge the jury on accomplice liability for lesser-included offenses, as required under State v. Bielkiewicz, 267 N.J. Super. 520, 533 (App. Div. 1993). "When a defendant might be convicted as an accomplice, the trial court must give clear, understandable jury instructions regarding accomplice liability." State v. Walton, 368 N.J. Super. 298, 306 (App. Div. 2004). Thus, a "jury must be instructed that defendant 'shared in the intent which is the crime's basic element,

and at least indirectly participated in the commission of the criminal act.'" State v. Oliver, 316 N.J. Super. 592, 596 (App. Div. 1998) (quoting Bielkiewicz, 267 N.J. Super. at 528). Indeed, an "accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal." State v. Whitaker, 200 N.J. 444, 458 (2009).

"[A] principal and accomplice, although perhaps liable for the same guilty act, may have acted with different or lesser mental states, thus giving rise to different levels of criminal liability." State v. Latney, 415 N.J. Super. 169, 174 (App. Div. 2010) (quoting State v. Ingram, 196 N.J. 23, 41 (2008)). Thus, "when an alleged accomplice is charged with a different degree offense than the principal or lesser included offenses are submitted to the jury," the court must "carefully impart to the jury the distinctions between the specific intent required for the grades of the offense." Bielkiewicz, 267 N.J. Super. at 528 (quoting State v. Weeks, 107 N.J. 396, 410 (1987)).

Here, the trial judge instructed the jury on the lesser-included offenses of manslaughter and theft. The judge also instructed on accomplice liability for the crimes in the indictment. The trial judge did not, however, instruct the jury on accomplice liability for the lesser-included offenses. While the jury should

18

have been instructed on accomplice liability for theft and manslaughter, the absence of that charge is not plain error.

Defendant's argument that, if given the <u>Bielkiewicz</u> charge, the jury may have found him guilty as an accomplice to one of the lesser-included offenses is unpersuasive. In that regard, the jury found defendant guilty of murder and robbery as a principal. The jury did not find defendant guilty of either of the lesser-included offenses. Thus, it is highly unlikely that the jury would have found defendant guilty as an accomplice to either of the lesser-included offenses. In short, the circumstances and evidence in this case do not constitute plain error. <u>See</u> <u>Ingram</u>, 196 N.J. at 41.

b. Own Conduct

Defendant argues that the trial judge erred in failing to instruct the jury on "own conduct" relating to the murder charge. He contends that such an instruction was necessary to distinguish between murder by his own conduct and murder as an accomplice, and that without that charge, the jury did not know the difference between the two types of liability. That distinction, defendant argues, determined whether he was subject to a term of life imprisonment without possibility of parole, or a term between thirty years and life imprisonment with

at least thirty years of parole ineligibility. We discern no plain error for three reasons.

First, the jury charge for murder and accomplice liability tracked the Model Jury Charges.

Second, the verdict sheet made clear that defendant could be found guilty of murder not by his own conduct, but as an accomplice. See State v. Galicia, 210 N.J. 364, 386-87 (2012) (A jury charge is "a road map to guide the jury," and "[a] verdict sheet is an essential component of that road map."). In that regard, the verdict sheet read as follows:

> COUNT 5 of the indictment charges that on or about the 30th day of September, 2011, . . . [defendant] did purposely or knowingly cause the death or serious bodily injury resulting in the death of [L.B.] contrary to the provisions of [N.J.S.A. 2C:11-3(a)(1) to (2)] . . . .
>
> a. On the charge of murder of [L.B.] our verdict is:
>
>     NOT GUILTY __ GUILTY __
>
>     . . . .
>
> b. Did the defendant commit murder by his own conduct while he was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery?
>
>     NO __        YES __

To the extent that defendant argues the jury was not able to distinguish between murder by his own conduct and murder as an accomplice, the verdict sheet demonstrates otherwise. By separating the jury's consideration into two parts — questions (a) and (b) — the verdict sheet allowed the jury to find defendant guilty of murder, but then indicate that it was not by his own conduct.

Third, the jury found that defendant committed the murder by his own conduct in the commission of a robbery. Under N.J.S.A. 2C:11-3(b)(4)(g),

> Any person convicted . . . [of first-degree murder] by his own conduct . . . shall be sentenced by the court to life imprisonment without eligibility for parole . . . if a jury finds beyond a reasonable doubt that any of the following aggravating factors exist: . . . (g) The murder was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit murder, robbery, sexual assault, arson, burglary, kidnapping, carjacking or the crime of contempt . . . .

The jury clearly marked "yes" on the verdict sheet in response to the question regarding defendant's own conduct. The jury also found defendant guilty of robbery of L.B. Thus, defendant's argument is rebutted by the jury's actual findings.

c. Conspiracy to Commit Robbery

Defendant next argues that the trial judge erred in failing to identify the robbery victim relating to the charge of conspiracy to commit robbery. In that

regard, defendant contends that the error created the possibility of a non-unanimous verdict because there were three possible victims: (1) L.B.; (2) B.C.; and (3) G.T. Accordingly, defendant argues there was a possibility that some of the jurors may have been convinced that he was in a conspiracy to commit robbery against L.B., while other jurors may have been convinced that he was in a conspiracy to commit robbery against C.B. or G.T. Again, because defendant did not make this objection at trial, our review is for plain error. R. 2:10-2.

A jury must reach a unanimous verdict in a criminal case. N.J. Const. art. I, ¶ 9; R. 1:8-9. "The notion of unanimity requires 'jurors to be in substantial agreement as to just what a defendant did' before determining his or her guilt or innocence." State v. Frisby, 174 N.J. 583, 596 (2002) (quoting United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1997)).

> Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict. There may be circumstances in which it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts.
>
> [State v. Parker, 124 N.J. 628, 641 (1991).]

A general instruction may not be sufficient where:

22

(1) a single crime could be proven by different theories supported by different evidence, and there is a reasonable likelihood that all jurors will not unanimously agree that the defendant's guilt was proven by the same theory; (2) the underlying facts are very complex; (3) the allegations of one count are either contradictory or marginally related to each other; (4) the indictment and proof at trial varies; or (5) there is strong evidence of jury confusion.

[State v. Cagno, 211 N.J. 488, 517 (2012) (citing Frisby, 174 N.J. at 597).]

Courts apply a two-prong test to determine whether a specific unanimity instruction is required. Ibid. (citing Parker, 124 N.J. at 639). First, the court asks "whether the allegations in the . . . count were contradictory or only marginally related to each other[.]" Parker, 124 N.J. at 639. Second, the court inquires "whether there was any tangible indication of jury confusion." Ibid.

Here, we discern no plain error. Defendant was found guilty of three counts of robbery of the three victims. In reaching those verdicts, the jury did not exhibit any signs of confusion. Instead, the jury unanimously found defendant guilty of robbery of L.B., B.C., and G.T. Accordingly, it is unlikely that the jury had any confusion that defendant was guilty of conspiracy to commit robbery. Indeed, there was no tangible indication of jury confusion with regard to the conspiracy to commit robbery instruction.

23

We also note that defendant's sentence would not be affected if the conspiracy conviction was vacated. Defendant's conviction for conspiracy to commit robbery merged with his conviction for robbery of L.B. Thus, any errors stemming from the instruction on the conspiracy to commit robbery charge was not "clearly capable of producing an unjust result." R. 2:10-2.

d. The Trial Judge's Response to the Jury's Question

Defendant argues that the trial judge's response to a jury's question during deliberations concerning defendant's "legal accountability" was inadequate. In that regard, the jury asked the trial court to "provide a better definition for legal accountability, specifically under conspiracy, vicarious liability. . . . Is legally being accountable the same thing as committing the crime?" Defendant contends that the court erred by failing to re-instruct the jury on accomplice liability and conspiracy, and that the court's response was "uninformative because [the] jurors were asking whether [defendant] was culpable as a principal, a conspirator or an accomplice."

In responding to the jury's question, the court explained:

> The first question for you to consider is the culpability of this defendant. And the way these charges are framed, I know sometimes it becomes confusing, but that's the first issue, whether there's a determination as to whether or not this defendant, in fact, committed the acts. If it's determined that this defendant did not

24

> commit the acts, the acts were committed but they were committed by, and the State having proven they were committed by a conspirator or a co-defendant, then it draws to the second question which, and I'm reading from the charge that I provided to you.
>
> Our law provides that a person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both. A person is legally accountable for the conduct of another person when he is engaged in a conspiracy with such other person or the conduct is within the scope of that conspiracy.

Read in context, we discern no plain error in the court's response. In that regard, the trial court molded the instruction to the facts of the case and did not simply reread the accomplice liability and conspiracy charges, which the jurors had with them during deliberations. The court also explained the different types of culpability, including by defendant's own conduct and as an accomplice. That clarification, combined with the jury's access to the instructions for conspiracy and accomplice liability during deliberations, was sufficient.

e. The Flight Charge

Defendant argues that in giving a flight charge the trial judge failed to include defendant's explanation for his flight. He contends that error deprived him of a fair jury trial and due process. Defendant did object to the flight charge.

"Flight from the scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017) (citing State v. Mann, 132 N.J. 410, 418-19 (1993)). A jury instruction on flight requires the jury to first find that there was a departure and then to find that the motive for the departure was an attempt to avoid arrest or prosecution. Mann, 132 N.J. at 421 (citing State v. Wilson, 57 N.J. 39, 49 (1970)). Accordingly, a jury must be able to draw reasonable inferences from the evidence that defendant's motive was to avoid apprehension on the charged offense. Randolph, 228 N.J. at 594-95.

Here, the charge on flight largely tracked the Model Jury Charges. Contrary to defendant's contention, the trial court explained that "[f]light may only be considered as evidence of consciousness of guilt if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offenses charged in the indictment."

Defendant, however, contends that evidence that he possessed twenty-three bags of crack cocaine at the time of his arrest warranted a jury charge explaining defendant's flight. The evidence on which defendant relies for this reason for flight did not warrant an instruction from the court. There was limited testimony concerning defendant's possession of drugs when he was

arrested. Moreover, in his closing statement to the jury, defense counsel included an explanation for defendant's flight. In short, the record does not support a factual basis for an alternative explanation regarding defendant's flight by the court.

f. Limiting Instruction for Evidence of Narcotics Possession

Defendant also argues that the trial judge erred by not providing the jury with a limiting instruction on how to consider the evidence of his possession of narcotics. Defense counsel — not the State — elicited testimony regarding defendant's narcotics possession. Thus, any prejudice that defendant may have suffered by the introduction of his narcotics possession was invited error. See State v. Jenkins, 178 N.J. 347, 359 (2004) (explaining that the doctrine of invited error is "designed to prevent [a party] from manipulating the system"); see also State v. Morton, 155 N.J. 383, 443 (1998) ("[D]efendant should not be allowed to convert unsuccessful trial strategy into grounds for reversal of a criminal conviction."). Accordingly, we find no error, and certainly no plain error, because the trial judge did not provide a limiting instruction relating to the evidence of defendant's narcotics possession.

A-1363-16T3

g. Identification

Finally, defendant argues that he is entitled to a new trial because the trial judge failed to appropriately instruct the jury on identification. In particular, he contends that the trial judge did not properly tailor the instruction to the facts of the case.

In State v. Henderson, 208 N.J. 208 (2011), our Supreme Court identified a number of factors to be considered in assessing the reliability of eyewitness identifications. The Court also directed that new Model Jury Charges on eyewitness identifications were to be developed, taking into account all of the "variables" addressed in its decision. Id. at 298-99. As a result of the Henderson Court's decision, the Model Jury Charge on out-of-court identification now includes various factors a jury should consider in deciding what weight, if any, it should give to eyewitness identification testimony. There are five factors that include: (1) opportunity to view and the degree of attention; (2) prior description of the perpetrator; (3) confidence and accuracy; (4) time elapsed; and (5) cross-racial effects. The Model Jury Charge instructs that the court should select and choose the appropriate factors based upon the identification evidence elicited at trial.

Further, the Model Jury Charge instructs that on the first factor — the witness's opportunity to view and degree of attention — the court should choose from seven sub-factors that can affect a witness's view and degree of attention. Those sub-factors include: (a) stress; (b) duration; (c) focus; (d) distance; (e) lighting; (f) intoxication; and (g) disguises or changed appearance.

Defendant contends that the trial judge failed to acknowledge that B.C. and G.T. made prior inconsistent statements regarding defendant's identity. This argument is unpersuasive, because the trial judge did instruct the jury on prior inconsistent statements:

> In regard to the testimony of [G.T.] and [B.C.], on cross-examination inconsistencies were shown between the prior statements and those given on the stand. The witnesses gave reasons, therefore among the reasons that I recall were things recently remembered and not therefore formerly disclosed, the failure of the proper statement to be recorded accurately, and later correcting a previous statement. The extent to which such inconsistencies or omissions reflect the truth is for you to determine. Consider their materiality and the relationship to [h]is or her entire testimony and all the evidence in the case, when, where, and the circumstances under which they were said or omitted, and whether the reasons he or she gave you, therefore, appear to you to be believable and logical.
>
> In short, consider all that I have told you before about prior inconsisten[t] statements or omissions.

29

Defendant also argues that the trial judge erred by not charging the jury on show-up procedures. The testimony at trial established that G.T identified Gonzalez, not defendant, during a show-up. Thus, that identification was not prejudicial to defendant.

Critically, defendant did not request a change to that portion of the charge, and did not object to the omission of that portion at the time the charge was given. The remainder of the jury instruction on identification tracked the Model Jury Charges and listed and explained all of the relevant factors for identification evidence. Accordingly, we discern no plain error in the jury instruction on identification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION